UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA    ) | |
| ) | |
| vs.                                               ) | CAUSE NO. 3:07-CR-82(01)RM |
| ) | |
| DENNIS JAMES WOODEN            ) | |

OPINION and ORDER

Dennis Wooden is charged in a two-count indictment with possession of a handgun with an obliterated or altered serial number (Count 1) and possession of a firearm after having been convicted of a felony (Count 2). Mr. Wooden filed a motion to suppress all evidence obtained during a January 2007 warrantless search of his person by officers of the South Bend Police Department. Magistrate Judge Christopher A. Nuechterlein conducted an evidentiary hearing on October 25 on Mr. Wooden's motion and issued a Report and Recommendation on October 31, to which Mr. Wooden filed a timely objection and the government a response. Mr. Wooden argues that the Report and Recommendation contains factual inaccuracies and improper findings with respect to the legal authority relied upon therein.

Mr. Wooden's motion to suppress is based on his claim that because his stop by South Bend Police resulted from an anonymous tip to the local 911 operator and the police didn't corroborate "the significant aspects" of the tip prior to stopping him, his stop and the search of his person by the police was unreasonable and illegal. Therefore, Mr. Wooden says, the court should suppress

the firearm seized from him and any statement he made to police as fruit of the poisonous tree.

The transcript of the suppression hearing shows that Officers Reynolds and Gibbons of the South Bend Police Department testified that they received a radio dispatch to investigate an incident involving a "male black wearing a black jacket with blue jeans" who had pulled out a silver handgun more than once while arguing with a "female white, with long and brown hair." The officers learned that the tip had been called in from a pay phone outside the Instant Lube on South Miami Street and that the couple was seen entering a 7-11 Store on South Miami Street.

Officer Reynolds, a 30-year veteran of the South Bend Police Department who has patrolled South Bend's south side for the last 8 to 9 years, was the first to arrive at the scene. He testified that when he turned onto Miami Street he didn't see anyone at the pay phone outside Instant Lube, but he did observe two people matching the description relayed in the radio dispatch walking westbound from the 7-11 Store. Officer Reynolds followed them in his car until Officer Gibbons arrived on the scene. Officer Reynolds then ordered the two people to lie on the ground and in questioning them discovered that the male was carrying a silver handgun. Officer Reynolds testified that in his experience as a police officer, the South Miami Street area of South Bend was a high-crime area and he considered the nature of the information relayed to him to constitute an emergency situation.

Officer Gibbons, a 21-year veteran of the South Bend Police Department who is assigned to patrol the southeast side of South Bend, testified that the dispatch information he and Officer Reynolds received caused him to arrive with his gun drawn when he approached the area where the two people had been stopped. Officer Gibbons testified that he and Officer Reynolds didn't go back to the 7-11 Store or Instant Lube to search for witnesses because they felt there was nothing anyone at those locations could have added to their investigation of the case.

Mr. Wooden challenges certain portions of the facts set forth in the Report and Recommendation – he says the 911 caller said Mr. Wooden had pulled a gun from a holster, but didn't say that the holster was located on his waist; the 7-11 Store is approximately four, not two, blocks from the Instant Lube; and there is no clear line of sight from the Instant Lube pay phone to the 7-11 Store's entrance – but Mr. Wooden hasn't shown how the court's findings relating to those facts could have affected the outcome of the motion. Any discrepancies between the facts presented at the hearing and the court's description of the facts in the Report and Recommendation is harmless.

Mr. Wooden says the court didn't properly credit the testimony of Rene Horvath, who was with him at the time of his stop and arrest. Mr. Wooden notes that Ms. Horvath testified that she and Mr. Wooden hadn't argued that day and he hadn't threatened her with a firearm. Mr. Wooden also complains that the court failed to mention his own testimony that he saw another individual – a drug

3

dealer in the neighborhood and someone with whom Mr. Wooden and Ms. Horvath had both had disagreements that same day – using the pay phone outside Instant Lube. During his testimony, Mr. Wooden identified that person as the 911 caller. Mr. Wooden, though, hasn't established how his or Ms. Horvath's in-court testimony could have in any way impacted what was known to Officers Reynolds and Gibbons on January 27. The question before the court was what the officers knew, not what Ms. Horvath or Mr. Wooden knew. *See* Florida v. J.L., 529 U.S. 266, 271 (2000) (The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search.").

Finally, Mr. Wooden says the Report and Recommendation didn't contain a proper legal analysis under Florida v. J.L., 529 U.S. 266 (2000). According to Mr. Wooden, "[t]he police officers' own observations did not corroborate the statements of the anonymous tipster." Obj., at 5. Mr. Wooden says that because he and Ms. Horvath weren't arguing or displaying any suspicious behavior when they were observed by Officers Reynolds and Gibbons, the officers were obligated to establish the reliability of the anonymous tipster and verify the information provided before stopping Mr. Wooden and Ms. Horvath. The court can't agree.

The Fourth Amendment to the United States Constitution protects people from unreasonable searches and seizures. An officer may, "consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. . . . [T]he Fourth Amendment requires at least a minimal level of objective justification for making

4

the stop. The officer must be able to articulate more than an 'inchoate and unparticularized suspicion or hunch' of criminal activity." Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (*quoting* Terry v. Ohio, 392 U.S. 1, 27 (1968)).

Police officers have a duty to speedily respond to emergency situations reported through the 911 system. United States v. Drake, 456 F.3d 771, 774 (7th Cir. 2006); *see also* United States v. Terry-Crespo, 356 F.3d 1170, 1176 (9th Cir. 2004) ("Police delay while attempting to verify an identity or seek corroboration of a reported emergency may prove costly to public safety and undermine the 911 system's usefulness. . . . The Fourth Amendment does not require the police to conduct further pre-response verification of a 911 caller's identify where the caller reports an emergency."). Anonymous tips together with additional observation and corroboration by the police can provide the level of suspicion necessary to warrant a *Terry* stop of a suspect. Adams v. Williams, 407 U.S. 143, 146-147 (1972).

This 911 caller reported an emergency situation – an argument between a man armed with a gun and a woman, which was taking place in a high-crime area of South Bend. Although the caller didn't disclose his name, Officers Reynolds and Gibbons promptly responded, confirmed that there was a pay phone within an area where the caller could have observed the man and woman walking towards the 7-11 Store, and observed a man and a woman matching the description provided by the caller in the area described by the caller.  Where, as here, a 911 call reports an immediate threat to public safety and provides sufficient details to enable officers to identify the suspects, the court may "presume the reliability" of

5

an eyewitness 911 call for purposes of establishing reasonable suspicion for the police to make a proper stop. "Requiring further indicia of reliability would only jeopardize the usefulness of the 911 system and the ability of officers to prevent further danger to the public." <u>United States v. Drake</u>, 456 F.3d 771, 775 (7th Cir. 2006).

A review of the transcript of the suppression hearing, the Report and Recommendation, Mr. Wooden's objections to the Report and Recommendation, and the government's response to those objections convinces the court that the Report and Recommendation contains a proper recitation of the facts of this case and a proper legal analysis based on those facts. The court agrees with the Magistrate Judge's conclusion that the totality of the circumstances creates the reasonable suspicion required by <u>Terry v. Ohio</u>, 392 U.S. 1 (1965), for Officers Reynolds and Gibbons to have stopped and searched Mr. Wooden. The Report and Recommendation is adopted, and Mr. Wooden's motion to suppress [docket # 21] is DENIED.

SO ORDERED.

ENTERED:     November 28, 2007

    /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court